IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELENA M. DAVID,<br><br>  Plaintiff,<br><br>  v.<br><br>J. STEELE ALPHIN, et al.,<br><br>  Defendants.<br>_____/ | No. C 06-04763 WHA<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE, AND VACATING HEARINGS ON MOTION TO DISMISS AND MOTION TO CERTIFY CLASS** |

**INTRODUCTION**

In this purported class action under ERISA, defendants move to transfer venue under 28 U.S.C. 1404(a) to the Western District of North Carolina. Defendants have shown that the convenience of parties and witnesses, and the interest of justice would clearly and substantially be improved by such a transfer. Defendants' motion to transfer is **GRANTED**.

**STATEMENT**

Plaintiff Elena David retired after working for Bank of America Corporation for 44 years in California. David currently resides in Arcata, California. While working, plaintiff made regular contributions to both Bank of America's pension plan and 401(k) plan. Plaintiff currently collects a monthly benefit from the pension plan, and in mid-2005, elected to receive a lump-sum payment of her 401(k) plan assets.

Defendants are "Bank Of America Corporation, a bank holding company, the Bank Of America Corporation Corporate Benefits Committee and its individual members, and the Bank of America Corporation's Board of Directors and its individual members" (Opp. at 1). Bank of

America is headquartered in Charlotte, North Carolina (Dorazil Decl. ¶ 5). According to its website, Bank of America maintains corporate offices in Charlotte, San Francisco, Chicago, and New York City.

Eighteen of 34 individual defendants reside in North Carolina. A single defendant resides in Los Angeles, California. All other defendants reside in other states. Six defendants are current members of the corporate benefits committee; all live in Charlotte, North Carolina (Dorazil Decl. ¶ 9).* Ten defendants are alleged former members of the corporate compensation committee. Seven of them live in North Carolina. None live in California (Porter Decl. Exh. 5). One defendant, Kenneth D. Lewis, is named in both his capacity as a former committee member and a current board member. The remaining defendants are board members. Six of them, including Lewis, live in North Carolina (Porter Decl. Exh. 6). One lives in California (*ibid.*). All others live in other states (*ibid.*).

At oral argument, parties mentioned that plaintiff was planning to dismiss all of the individual defendants who were members of the board of directors and three individual defendants who were improperly named as former members of the corporate benefits committee. If this happens, there will be thirteen individual defendants, ten of whom live in North Carolina, and none of whom live in California.

Prior to January 1, 2005, the full board of directors appointed members of the corporate benefits committee (Gilliam Decl. ¶ 8). Since then, the board of directors' compensation committee appoints corporate benefits committee members (*id.* at ¶ 5). The corporate benefits committee was listed as the administrator of both the pension plan and the 401(k) plan (Dorazil Decl. at ¶ 7). The corporate benefits committee controlled both plans and made decisions regarding the selection of investments, retention of service providers, trusteeship, and recordkeeping (*id.* at ¶ 8). The committee normally met quarterly in Charlotte, North Carolina, and only two committee meetings relevant to this lawsuit took place outside of Charlotte (*ibid.*).

---

*Defendants also present the declaration of Allison Gilliam, Bank of America's assistant secretary. She declares that the corporate benefits committee currently has four members, three of whom live in North Carolina and one of whom has an address of record in Rhode Island (Gilliam Decl. ¶¶ 5,7). These people are not identified in her declaration.

2

The committee retained Callan Associates, Inc. for advice on investment management issues (*id*. at ¶ 11). Callan's website reveals that it has its corporate office in San Francisco and an office in Denver. http://www.callan.com/about/offices.asp. Paul Erlendson, who resides in Denver, Colorado, was the committee's primary contact at Callan, and also attended some of the meetings (*ibid.*). Documents and records related to the plans are located in Charlotte (*id*. at ¶ 12). Service providers for the plans, such as record keeping, preparation of forms, and trustee services, are located elsewhere outside the Northern District of California (*id*. at ¶ 13).

David filed her complaint in this district on August 7, 2006, alleging violations of ERISA. On October 16, 2006, plaintiff filed an amended complaint which alleged her complaint as a class action on behalf of all members of Bank of America's pension plan and 401(k) plan. In sum, plaintiff alleged that defendants breached their fiduciary obligations by causing the pension plan and the 401(k) plan to invest in mutual funds affiliated with Bank of America rather than unaffiliated investments that would have been better for the participants. These funds charged higher fees than unaffiliated funds. Plaintiff's motion to certify the class was filed on December 14, 2006, and it is currently pending. So too is defendants' motion to dismiss. These motions are scheduled to be heard on January 18, 2007.

**ANALYSIS**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. 1404(a). This section's purpose is "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citation omitted). A district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted). The district court must consider both public factors which go to the interests of justice, and private factors, which go to the convenience of the parties and witnesses. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

3

Venue for an action under ERISA is appropriate in any judicial district where: (1) the plan is administered; (2) the breach took place; or (3) a defendant resides or may be found. 29 U.S.C. 1132(e)(2). Neither party disputes that this action could have been brought in the Western District of North Carolina. The pension plan and the 401(k) plan were administered in Charlotte, North Carolina. Bank of America has its headquarters there as well, and many of the individual defendants reside there, thus this action could have been brought in the Western District of North Carolina.

### 1. CONVENIENCE AND FAIRNESS FACTORS.

The district court must consider private convenience and fairness factors, including ease of access to sources of proof, plaintiff's choice of forum, relative convenience to parties, and relative convenience to witnesses. *Decker Coal*, 805 F.2d at 843.

The first factor largely involves the location of relevant sources of proof. With technological advances in document storage and retrieval, transporting documents does not generally create a burden. *Vitria Tech. Inc. v. Cincinnati Ins. Co.*, 2005 WL 2431192, *3 (N.D. Cal. 2005). Defendants argue that most of the evidence related to plaintiff's claims, specifically documents related to administration of the plans, is located in Charlotte, North Carolina. Defendants do not contend that transporting documents would cause them hardship, so this factor does not favor transfer.

A plaintiff's choice of forum is accorded great deference in ERISA cases. *Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288, 1302 (9th Cir. 1997). Despite this, it has been said that "[p]laintiffs' choice of forum is entitled to less deference where, as here, the action is brought on behalf of a nationwide class." *Italian Colors Rest. v. Am. Express Co.*, 2003 U.S. Dist. LEXIS 20338, *10 (N.D. Cal. 2003). No decision in the Ninth Circuit has squarely addressed the interplay between the degree of deference given to plaintiff's chosen forum in ERISA cases and the lesser degree of deference given in class actions. Venue transfers in ERISA cases, however, do occur. In *Jacobson*, the Ninth Circuit held that transferring venue from plaintiff's chosen forum was not an abuse of discretion because other factors favored transfer. *See Jacobson*, 105 F.3d at 1302. Here, defendants argue that David's choice of forum should not be

given deference because as a class action, this lawsuit now includes thousands of plaintiffs spread across the country. This argument ignores the fact that the class has not yet been certified. If it is certified and David is appointed class representative, she would still bear a great deal of responsibility. Also, these thousands of other class members would not need to appear in this action unless they choose to intervene. Intervention would be a real possibility, but it has not occurred yet (and the residency of any intervenors is speculative at this stage). Accordingly, plaintiff's choice of forum remains entitled to deference and weighs against transfer.

As to convenience to the parties, defendants point out that Bank of America has its headquarters in Charlotte, North Carolina. Currently, 18 of 34 individual defendants reside in North Carolina. If the defendants on the board of directors are dismissed, ten of the 13 remaining defendants live in North Carolina. A single defendant resides in California. Plaintiff agrees that the Western District of North Carolina would be the most convenient forum for defendants, but argues that Bank of America is a large company and can easily afford to pay for its employees' travel expenses. David contends that she is a long-time resident of California, and that she would suffer hardship from increased travel time if the case were transferred. Defendants respond, arguing that because David does not have personal knowledge of the facts of the case, she need not travel. Plaintiff still, however, is still likely to testify at trial on her own behalf and has an interest in attending the full trial and important hearings. Defendants also argue that they will suffer considerable inconvenience because of lost time and disrupted work schedules from traveling to San Francisco for trial. On balance, this factor favors transfer because of the large number of defendants in the transferee district. Plaintiff chose to include the many North Carolina-based individuals named as defendants. Plaintiff has no one but herself to blame for having set up a major argument in favor of transfer.

Finally, convenience to potential witnesses must be considered. Courts must consider the effect of transfer on the availability of witnesses to testify at trial, particularly for third-party witnesses. *DeFazio v. Hollister Employee Ownership Trust*, 406 F. Supp.2d 1085, 1090 (E. D. Cal. 2005). Although discovery is still at a relatively early stage, parties agree that at least some

5

current and former members of the corporate benefits committee will be called as witnesses. Defendants on the board of directors are likely to be dismissed, and so will probably not be called as witnesses. Of 13 committee-member defendants, ten reside in North Carolina. These defendants can be expected to testify in their own defense, but plaintiff has no right to make them testify at trial if they cannot be subpoenaed. Plaintiff may still present deposition testimony, but it will aid plaintiff herself to be able to call these people as live witnesses. It will aid the fact finder also to hear these witnesses' live testimony. By transferring this action to North Carolina, the Court has the additional option of having these individuals called to give live testimony.

Third-party witnesses will likely include former Bank of America employees. None of them is subject to this court's subpoena power as they are largely located in the Western District of North Carolina. Bank of America could likely arrange for at least some of them to appear, but could only be counted on to do so if their testimony were beneficial to defendants.

Defendants argue that the most important third-party witness will be Paul Erlendson, Bank of America's contact person at Callan Associates. Erlendson resides in Denver, Colorado, which is beyond the subpoena power of both this district and the proposed transferee district. If unwilling to testify, he cannot be compelled to appear in either forum. If willing to testify, he would suffer equal inconvenience traveling to either forum. Plaintiff identifies a single potential third-party witness living and having an office in the Northern District of California: Warren Brown, an advisor at Callan Associates. Defendants contend, however, that Brown's testimony is likely to be less important than Erlendson's because Brown only provided analytical support to Erlendson, the main advisor. Defendants' argument still does not defeat the fact that Brown can be compelled to testify here but not in the transferee district. The location of these third-party witnesses slightly disfavors transfer.

On balance, the large number of witnesses and parties located in North Carolina favors transfer. As mentioned above, plaintiff does identify one third-party witness residing in San Francisco, but ten of 13 current and former members of the corporate benefits committee reside

6

in North Carolina. In summary, despite the deference that should be given to plaintiff's chosen forum, the convenience factors favor transfer.

**2.     INTEREST OF JUSTICE.**

A district court hearing a motion to transfer must also consider public-interest factors such as relative degrees of court congestion, local interest in deciding local controversies, potential conflicts of laws, and burdening citizens of an unrelated forum with jury duty. *Decker Coal*, 805 F.2d at 843. The last two factors are inapposite here. This is an ERISA action which will be decided exclusively under federal law regardless of where it is heard. Parties have agreed that this case is to be a bench trial, so burdening citizens of an unrelated forum with jury duty is not a concern.

Defendants point out that dockets are more congested here on the Northern District of California than on the Western District of North Carolina. The average judge on the Northern District of California has 468 pending cases, while the average judge on the Western District of North Carolina has 350 pending cases. *See* http://www.uscourts.gov/cgi-bin/cmsd2005.pl. Plaintiff responds, arguing that average time to trial in the two districts is similar, and that a trial date has already been set for April 7, 2008. The median time for trial in 2005 was 28 months for the Northern District of California and 27 months for the Western District of North Carolina (Porter Decl. Exh. 7). A difference of one month to trial does not significantly favor either side.

Plaintiff argues that local interests disfavor transfer. Plaintiff herself worked for Bank of America in this district and plaintiff brings up "deep, historic ties" Bank of America has to this area because the company was formerly headquartered in San Francisco (Opp. at 1). Plaintiff also argues that "thousands of participants in the Plans [sic] who live in this district have suffered as a result of defendants' alleged fiduciary breaches" (*id.* at 11). This is really a makeweight since it is unlikely that any of these unnamed plan participants would ever travel to the courthouse in either location. Since David seeks to bring a class action, moreover, it is possible that there are many thousands of participants in other districts with significant interests as well. In response, defendants argue that the alleged "breach" occurred in the Western District of North Carolina, so local interest is stronger there. This is too metaphysical to count.

7

If the wrong occurred there, its effects were felt here, or so it is alleged. These factors are inconsequential.

At bottom, this order places considerable weight on the fact that so many trial witnesses are in North Carolina. In modern times, of course, the vast majority of cases settle and no trial ever occurs. Inconvenience to the trial witnesses never materializes. Perhaps that would be the case here. We can only speculate at this stage. As things now stand, however, a trial has been demanded and we must allow for its possibility and attendant inconvenience. Were it practical to temporize and to transfer shortly before trial (if no settlement occurred), then the Court would do so. But it is not practical to do so, for the district judge who tries the case should preside also over the important pretrial motions like class certification and summary judgment. On the present record, plaintiff has sued 18 individuals, all of whom live in North Carolina. The deference due her choice of forum is important but it cannot outweigh the convenience factor associated with so many individuals.

In summary, all of the decisions that affected the pension plan and the 401(k) plan were made by Bank of America employees in Charlotte, North Carolina. The vast number of individual defendants and third-party witnesses in North Carolina militate strongly in favor of transfer. Defendants have met their burden of showing that this action should proceed in the Western District of North Carolina.

**CONCLUSION**

For all the above-stated reasons, defendants' motion to transfer venue to the United States District Court for the Western District of North Carolina is **GRANTED**. The clerk shall transfer the entire action to that district court. The hearings on plaintiff's motion for class

certification and defendants' motion to dismiss scheduled for January 18, 2007 at 8:00 a.m. are hereby **VACATED.** These motions will need to be refiled once the case arrives in the Western District of North Carolina.

**IT IS SO ORDERED.**

Dated: January 4, 2007

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE